1997 ND 151

**Theresa J. HANSON n/k/a Theresa J. Gunter, Plaintiff and Appellant**

v.

**Randy E. HANSON, Defendant and Appellee**

**Civil No. 970016.**

Supreme Court of North Dakota.

July 24, 1997.

Carol K. Larson of Pringle & Herigstad, Minot, for Plaintiff and Appellant.

Carl O. Flagstad, Jr., Minot, for Defendant and Appellee.

MARING, Justice.

[¶ 1] Theresa Gunter, formerly known as Theresa Hanson, appeals from the district court's judgment requiring Theresa to obtain permission from the district court or the noncustodial parent in the event she wishes to migrate out of state with her children for four months. We affirm.

[¶ 2] Randy and Theresa Hanson were divorced November 9, 1992. Theresa received sole physical custody of the parties' daughters, Alexa and Courtney, ages eight and five respectively.

[¶ 3] On March 24, 1996, Theresa married Daniel Gunter. Theresa, Daniel, and the two girls live in Towner, North Dakota. Randy lives in Minot and has regular visitation. Daniel is a beekeeper. His job requires him to live in Sour Lake, Texas, from February through May for twelve weeks per year. Daniel's entire family, including his parents, grandmother, and his brother's family, travel to Texas during this time every year. Theresa, a full-time homemaker, is available to care for the children in North Dakota and Texas.

[¶ 4] In April 1996, anticipating Theresa's intention to travel to Texas with the children, Randy moved for change of custody. Theresa filed a return to the motion, asking the court to increase Randy's child support and to deny Randy's motion to amend custody, arguing the migratory move would not be a material change in circumstances. As an alternative to changing custody, Theresa proposed that Randy be allowed increased visitation when the children are in North Dakota, and that his child support obligation be waived during the time the children are away, to assist Randy with the transportation expenses when exercising visitation in Texas.

[¶ 5] In an oral decision, the district court found Theresa's move would result in a substantial change of circumstances and would not be in the best interests of the children. The court orally ordered custody of the children changed, allowing Randy custody from January 1 to June 30, and Theresa custody July 1 to December 31, alternating every six months thereafter. Following the oral decision, Theresa's attorney informed the district court Theresa would not migrate to Texas. On August 6, 1996, the court entered a written order rendering Randy's motion moot because Theresa was not planning to remove the children from the State. The district court further ordered, under N.D.C.C. § 14–09–07, that Theresa must seek permission from the district court or Randy before she can take the children to Texas in the future.[1]

[¶ 6] Theresa moved for reconsideration, arguing N.D.C.C. § 14–09–07 does not require a custodial parent involved in migratory labor to seek permission from the noncustodial parent or district court for a temporary move. The district court denied the motion. On December 30, 1996, the district court issued an amended judgment, denying Randy's motion to change custody, and requiring Theresa to seek the district

---

1. In the *Matter of B.E.M.*, 1997 ND 134, 566 N.W.2d 414, this Court recently outlined the procedural steps a district court should follow in the future when confronted with competing motions for change of residence and change of custody.

court or Randy's permission in the event she wishes to migrate with the children. Theresa appeals, arguing a custodial parent should not be required to seek permission for a migratory move out of state for twelve weeks.

[¶ 7] The district court's decision ordering Theresa to seek permission before temporarily changing the residence of the children is an attempt by the district court to maintain the status quo between the parents' conflicting rights until the court has an opportunity to weigh the merits of each parties' interests. Normally, in reviewing an exercise of the district court's authority to maintain the status quo pending a hearing on the merits, we will apply an abuse of discretion standard. *Cf. Sargent County Bank v. Wentworth*, 434 N.W.2d 562, 566 (N.D.1989) (reviewing a temporary injunction under an abuse of discretion standard). Accordingly, we believe the appropriate standard of review in this case is abuse of discretion. A district court abuses its discretion when it acts in "an arbitrary, unreasonable or unconscionable manner." *Matter of Guardianship of Renz*, 507 N.W.2d 76, 79 (N.D.1993).

[¶ 8] When determining Theresa should obtain permission from Randy or the district court to go to Texas, the district court relied on N.D.C.C. § 14–09–07. Section 14–09–07, N.D.C.C., provides:

"A parent entitled to the custody of a child may not change the residence of the child to another state except upon order of the court or with the consent of the noncustodial parent. . . ."

[¶ 9] This statute specifically requires a custodial parent to seek permission when they wish to "change the residence" of the children. Theresa seeks to take the children out of the state for twelve weeks per year. In doing so, although she is not permanently changing the children's residence, she is in fact temporarily changing the children's residence. Thus, although N.D.C.C. § 14–09–07 may not directly apply, the policy considerations underlying N.D.C.C. § 14–09–07 are relevant.

[¶ 10] Section 14–09–07, N.D.C.C., was created to protect the noncustodial parent's visitation rights in the event the custodial parent wants to move out of state. Hearing on S.B. 2270, before the Senate Judiciary Committee, 52nd Legislative Assembly (1991), January 21, 1991, statement of Senator Wayne Stenehjem. Its purpose is to "safeguard the visitation rights of the noncustodial parent and to thereby maintain and promote the parent and child relationship." *Stout v. Stout*, 1997 N.D. 61, ¶ 12, 560 N.W.2d 903. Under certain circumstances, a migratory move might impact visitation between the noncustodial parent and the children in much the same way as a permanent move. In circumstances when a temporary change of residence will affect visitation, N.D.C.C. § 14–09–07 suggests it may well be appropriate for a district court to require a custodial parent to seek permission from the district court or noncustodial parent.

[¶ 11] In addition to N.D.C.C. § 14–09–07, we note that in order to enforce visitation between the noncustodial parent and children, district courts maintain continuing jurisdiction over a custody order. *Fichter v. Kadrmas*, 507 N.W.2d 72, 74 (N.D.1993). Even without guidance from N.D.C.C. § 14–09–07, it is necessarily implicit that a district court has the authority to require permission for a migratory leave, when a migratory leave interferes with visitation. When the noncustodial parent does not agree to the modification of visitation, the authority to require permission for a leave of absence from the state when such a leave will significantly alter visitation, is necessarily implicit in the trial court's authority to establish and enforce visitation rights.

[¶ 12] Under the facts of the case, we do not believe the district court abused its discretion by requiring Theresa to seek permission for the migratory leave. If the children move to Texas for four months a year, they will not only be forced to live in a new environment and attend a different school, it will also dramatically increase the geographic distance between Randy and the children. Unless Randy exercises visitation in Texas, he will miss approximately seven weeks of visitation. Although Theresa has tried to accommodate this by waiving child support and agreeing to increased visitation before

and after the migration, the visitation schedule will have to be modified. If Randy will not grant permission for the leave, the district court has the authority to require permission to ensure that Randy has adequate visitation.

[¶ 13] We note, however, in the final section of the district court's amended judgment, the district court stated:

"If Theresa attempts to take the children to Texas as she has proposed, the Court will seriously consider changing custody upon appropriate motion, awarding custody to Randy January 1 to June 30 and to Theresa July 1 to December 31 of each year."

[¶ 14] At best, this language is ambiguous. It may be a suggestion of the outcome should Theresa attempt to move the children without permission. It may also be interpreted by Theresa that she may lose custody when she brings her motion to take the children to Texas. Any future request by Theresa to remove the children from the state generally should be analyzed in light of *Stout*, 1997 N.D. 61, 560 N.W.2d 903 and *In the Matter of B.E.M.*, 1997 ND 134, 566 N.W.2d 414, if appropriate.

[¶ 15] We, therefore, strike the last sentence in the amended judgment and affirm as modified.

[¶ 16] VANDE WALLE, C.J., NEUMANN, J., and JAMES H. O'KEEFE, Surrogate Judge, concur. SANDSTROM, J., I concur in the result.

[¶ 17] James H. O'KEEFE, Surrogate Judge, sitting in place of MESCHKE, J., disqualified.