Severson v. Severson, 1998 ND App 6, 583 N.W.2d 120|N.D. Supreme Court|
Severson v. Severson, 1998 ND App 6, 583 N.W.2d 120
[Go to Documents]
Filed Aug. 18, 1998
COURT OF APPEALS
STATE OF NORTH DAKOTA
1998 ND APP 6
Kathleen M. Severson, Plaintiff and Appellee
v.
Randal H. Severson, Defendant and Appellant
Civil No. 970371CA
Appeal from the District Court for Grand Forks County, Northeast Central Judicial District, the Honorable Bruce E. Bohlman, Judge.
AFFIRMED WITH DIRECTIONS.
Opinion of the Court by Burdick, Surrogate Judge.
Loretta J. Walberg (argued), of Kuchera, Stenehjem & Walberg, P.O. Box 6352, Grand Forks, ND 58206-6352, for plaintiff and appellee.
Constance L. Triplett (argued), of Triplett Law Office, P.O. Box 5178, Grand Forks, ND 58206-5178, for defendant and appellant.
Severson v. Severson
Civil No. 970371CA
Burdick, Surrogate Judge.
[¶1] Randal H. Severson appealed from a divorce judgment granting him and Kathleen M. Severson "joint legal custody" and "share[d] physical custody" of their minor children, and dividing their marital property. We affirm with directions.
[¶2] Randal and Kathleen were married November 14, 1987. Two daughters were born of the marriage -- Erin Lynn, born August 15, 1988; and Abigail Lee, born January 12, 1996. Kathleen also has primary physical custody of a 16-year old daughter from a previous relationship. Randal did not adopt her.
[¶3] During the marriage, Randal worked as a road blader until he went to school for two years to become a paramedic. At the time of trial, Randal was employed as a paramedic at United Hospital in Grand Forks. Kathleen had a four year degree in elementary education and an LPN associates degree in nursing. During the marriage, she worked in a nursing home and taught first grade in Larimore. At the time of trial, Kathleen was employed part-time by Grand Forks Clinic as a diabetes-coordinator-nurse educator. Randal and Kathleen separated in November 1996, only three months after purchasing a home in Larimore. Randal moved into an apartment near the marital home.
[¶4] The primary dispute of the parties involves custody of Erin and Abigail. The parties acknowledged, and the trial court found, Randal and Kathleen are both good and fit parents for the minor children. Randal, however, was concerned about Kathleen's perceived permissiveness in dealing with her older daughter, and how this may affect Erin and Abigail as they grow older.
[¶5] The trial court awarded Randal and Kathleen "joint legal custody" of Erin and Abigail, and defined this "meaningless amorphism," Dickson v. Dickson, 1997 ND 167, ¶6, 568 N.W.2d 284. The trial court defined "joint legal custody" as follows: "A. Each parent will have the right to obtain school and medical records, and each parent has the right to make decisions for the care of the children when they are in the care of that parent. As to non-emergency decisions regarding health care, education and religious training, the parties shall have equal rights, and consultation shall be accomplished and a joint decision reached.
"B. To foster consistency, the parties shall also establish rules of discipline for the children that will be followed in both households. The parties shall also agree on matters such as exchange of clothing for the children, bringing in romantic partners of the parents (or [the oldest daughter]), transportation issues for the children and managing different routines.
"C. Each party has the right to be informed by school officials about the childrens' welfare, educational progress and status, and to attend school and parent/teacher conferences. The school is not required to hold separate conferences for each party.
"D. Flexibility in child care responsibilities and parental involvement are to be encouraged and their agreed terms are to be liberally interpreted to allow the children the maximum benefit to avoid being deprived from the love, concern and care of both Plaintiff and Defendant. Each parent agrees to promote in their children respect and affection for the other parent and acknowledge that neither shall do any act which may estrange or alienate the children from the other parent or which may hamper the natural development of the love and affection of the children for each parent.
"E. Each party has the right to reasonable access and telephone contact with the minor children.
"F. Both the Plaintiff and Defendant shall keep the other party advised of any change in residence, address, or home telephone number by providing written notification, as far in advance as reasonably possible, in order to allow uninterrupted communication with the minor children.
"G. The parties shall use mediation to resolve any issue in this regard that they cannot resolve themselves, before resorting to the courts."
[¶6] The trial court also ordered the parties to "share physical custody" of the children, with Kathleen "being the home where they reside for child support purposes." The trial court granted Kathleen primary, physical custody of the children during the school year, granted Randal primary, physical custody of the children during the summer, and further set forth detailed visitation schedules for each parent.
[¶7] The trial court noted the family's "somewhat bleak" financial condition caused by living "beyond their means" and accumulating substantial consumer debt. The only real asset the parties had was the marital home, purchased for $56,000 less than one year before the divorce, and subject to a $52,000 mortgage. The trial court accepted Randal's estimation that the home had not increased in value and offered to award it to either party if they wished to have it as a residence for the children, giving Kathleen the first right to choose. If she chose to remain, the home was to be appraised and any net equity divided between the parties. A second mortgage would be given to Randal to secure his part of the equity, with interest at four percent per annum until the house was sold or until the children no longer occupied the home. Whoever lived in the home was to have responsibility for the mortgage payments, maintenance, taxes and insurance. Kathleen chose to live in the home.
[¶8] On appeal, Randal challenges both the child-custody award and the distribution of marital property.
[¶9] A trial court's child-custody determinations are findings of fact subject to appellate review under the clearly erroneous standard of N.D.R.Civ.P. 52(a). Goter v. Goter, 1997 ND 28, ¶8, 559 N.W.2d 834. A trial court has substantial discretion in custody matters, and must award custody based on its determination of the best interest and welfare of the child. Hogue v. Hogue, 1998 ND 26, ¶5, 574 N.W.2d 579; N.D.C.C. §§ 14-09-06.1 and 14-09-06.2. In Kaloupek v. Burfening, 440 N.W.2d 496, 497-498 (N.D. 1989) (citations omitted), the North Dakota Supreme Court observed: "Although we have recognized that it is not in the best interests of a child to unnecessarily change custody or to bandy the child back and forth between parents, . . . we have also concluded that split or alternating custody is not per se erroneous. . . . In North Dakota parents have equal rights to the custody and control of their minor children, and as between a mother and father there is no presumption as to who will better promote the best interests and welfare of the child. . . . When the evidence supports a trial court's finding that a split or alternating custody award is in the best interests of the child, that finding will not be found clearly erroneous on appeal."
[¶10] We recognize the trial court has a difficult choice to make in deciding custody between two fit parents. See Weber v. Weber, 512 N.W.2d 723, 727 (N.D. 1994). A reviewing court will not retry a custody case or substitute its judgment for that of the trial court, if the trial court's determination is supported by evidence in the record. Schmidkunz v. Schmidkunz, 529 N.W.2d 857, 859 (N.D. 1995).
[¶11] Randal asserts that the trial court erred in awarding Kathleen custody of Erin and Abigail for nine months every year because of the manner in which Kathleen parented her oldest daughter. When she was 14, she began smoking cigarettes and drinking alcohol, began experimenting with drugs and sex, and would stay out all night. According to Randal, Kathleen failed to express her disapproval and set limits and consequences for the oldest daughter's conduct. He is concerned about the potential negative influence this will have on Erin and Abigail as they approach their teenage years. Randal asserts changing alternating custody to an even six months division would place the parties on equal footing as parents and would alleviate many of his concerns.
[¶12] Although the oldest daughter had problems during her early adolescence, a clinical psychologist who completed a custody evaluation testified she had gotten "through that turbulent time and . . . come out of it in a . . . responsible or somewhat more stable sort of adult way . . . ." After undergoing counseling, she now has two jobs and is getting good grades in school. The clinical psychologist noted in his report that he was "impressed" with her. The psychologist described Kathleen's parenting style as "permissive" and Randal's as "rigid and inflexible," and testified he preferred a "balance[d]" approach to parenting. The psychologist attributed the oldest daughter's new found relative maturity to the influence of adults in her life, including Kathleen and Randal. The oldest daughter's former high school principal described her as "developing into a leader by being involved in activities." The psychologist did not report the oldest daughter or Kathleen would be bad influences on Erin or Abigail.
[¶13] The trial court considered the work schedules and living arrangements of the parties in arriving at its custody decision. Kathleen works part-time from 8 a.m. to 1 p.m., and her work schedule is flexible, allowing her to be home with the children when they are home from school. Randal's work schedule requires that he work weekends, 12-hour shifts, with a 24-hour shift one day a week, and does not permit the same level of flexibility. The trial court specifically noted Kathleen could be home more often with the children, and that this was particularly important for Abigail, who is still an infant.
[¶14] The trial court considered Randal's request to have custody of the children on an equal basis, but correctly reasoned "[i]t is seldom, if ever, that each parent has equal time with the children, even in families that are intact." Under these circumstances, we cannot say the trial court's decision to have the children reside for nine months with Kathleen and three months with Randal is clearly erroneous.
[¶15] However, we do share one of Randal's concerns. Other than setting forth the time periods during which the children will physically reside with the parties and corresponding visitation rights, the trial court's decision did not resolve many of the issues between the parties. Instead, the trial court ordered the parties to seek agreement as to such issues as rules of discipline to be followed in both households, and nonemergency decisions regarding health care, education and religious training. The inability of the parties to agree on these issues contributed to the breakup of the marriage. We think it is doubtful that the parties will reach agreements any more easily living separately than they did living together. Notwithstanding our skepticism, we believe it was not unreasonable for the trial court to give the parties a reasonable time to attempt to reach a mutual agreement on these issues. District courts maintain continuing jurisdiction over custody orders. See Hanson v. Hanson, 1997 ND 151, ¶11, 567 N.W.2d 216. If the parties are unable to reach agreement, the trial court, upon application of either party, shall designate either Kathleen or Randal as the primary custodial decisionmaker.
[¶16] Randal also challenges the trial court's distribution of marital property. Randal claims that the trial court failed to take into account a substantial asset that he brought into the marriage, a $30,000 certificate of deposit. Because of this, Randal asserts that the trial court should have awarded him the marital home free and clear of any claim by Kathleen, or at least required Kathleen to take out a separate loan to pay off his equity award immediately.
[¶17] A trial court's findings on matters of property division will not be set aside on appeal unless they are clearly erroneous under N.D.R.Civ.P. 52(a), or they are induced by an erroneous view of the law. Wald v. Wald, 556 N.W.2d 291, 294 (N.D. 1996). In Young v. Young, 1998 ND 83, ¶10, 578 N.W.2d 111 (citations omitted, emphasis in original), the North Dakota Supreme Court recently explained: "Section 14-05-24, N.D.C.C., requires the court to make an equitable distribution of the marital estate. . . . '"[A]ll of the real and personal property accumulated by the parties . . . , regardless of the source" must be included in the marital estate to be divided by the trial court.'. . . We have repeatedly held '[s]eparate property, whether inherited or otherwise, must initially be included in the marital estate.'. . . The origin of the property is only one factor to consider under the Ruff-Fischer guidelines, even if the property was acquired before the marriage or inherited. . . . We have never held that property brought into a marriage or acquired by gift or inheritance by one spouse, be irrevocably set aside to that spouse."
[¶18] While Randal brought a $30,000 certificate of deposit into the marriage, none of that money existed at the time of trial. The parties spent the money on family necessities and living expenses while Randal, without employment, was attending school to become a paramedic. Randal therefore participated in and benefitted from the expenditure of the certificate of deposit. The parties were in poor financial condition and had limited resources and assets, with basically a negative net worth. Randal has not convinced us that the trial court's distribution of marital property is clearly erroneous.
[¶19] The judgment is affirmed with directions.
[¶20]
Eugene A. Burdick, S.J.
Michael O. McGuire, D.J.
Gerald G. Glaser, S.J.