1999 ND 150

Bryan C. TIBOR, Plaintiff
and Appellee,

v.

Kathleen E. TIBOR, n/k/a Kathleen E.
Zich, Defendant and Appellant.

No. 990020.

Supreme Court of North Dakota.

July 29, 1999.

Gregory Ian Runge, Bismarck, for plaintiff and appellee.

Melissa Ann Hauer, Wheeler Wolf, Bismarck, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Kathleen Zich appealed from a trial court order denying her request to move with her three children to Macon, Georgia. We conclude the trial court's finding the move is not in the children's best interests is clearly erroneous. We reverse and remand with directions the trial court enter an order granting the motion and restructuring visitation to preserve and foster the children's relationship with their father, Bryan Tibor.

## I

[¶ 2] Zich and Tibor were married in 1986 and have three children. The parties were divorced in October 1995, and judgment was entered upon their stipulation. They were awarded "joint legal and physical custody" of the children, with each having physical custody for considerable time, but with Zich having physical custody of the children more days per year than Tibor. The judgment also provided the parties must retain their residence within North Dakota for five years.

[¶ 3] Each party remarried following the divorce. Zich married Terrence Zich in March 1996. Shortly thereafter, Terrence Zich, an environmental engineer and hydro-geologist, lost his job through company downsizing. In November 1996, Zich filed a motion requesting that the court designate her as sole physical custodian of the children, set support amounts according to the child support guidelines, and abolish the five-year restriction on the parties' ability to move out of state. In January 1997, the trial court ordered amendments to the original divorce judgment, designating Zich the primary custodian of the children and eliminating the five-year residency requirement. The court's order quite clearly implied Zich would be granted approval to relocate the children out of state with a minimal showing:

> I am satisfied that upon a showing of a proper reason for leaving this state, this Court would grant such proposal with an effort at that time to establish proper visitation with the children. If this cannot be accomplished by agreement, this Court orders that the parties must return to Court for the purpose of establishing appropriate levels of visitation and child support.

[¶ 4] Soon thereafter, Terrence Zich was offered an engineering position in Macon, Georgia, and Zich filed a motion for permission to move there with the children. The court denied the motion. In September 1997 Terrence Zich accepted the position and moved to Georgia. Zich then filed a motion for a new trial again seeking permission to relocate with the children to Georgia. The trial court granted the motion for new trial, but the judge recused himself from presiding over future proceedings. In its memorandum opinion, the judge explained why he was recusing himself:

> This matter comes before the Court upon a motion for new trial....
>
> One of the issues raised by [Zich] is that this Court misled the parties as to their burden of proof in the ultimate hearing on the request to leave the state....
>
> .... I am satisfied that I indeed misled [Zich] into believing that [her] burden on the request to leave the state would be somewhat less than the decisions of the Supreme Court might require. As a result, I believe I may have caused a situation where [Zich] presented less testimony than was available to satisfy the Court. I believe that I even indicated the same at the time of my oral ruling on July 15. Although my intentions were good each time, I believe that my subsequent actions caused a surprise which should be allowed to be corrected if possible.
>
> ....
>
> [S]ince this Court has listened to the testimony and I believe I have been tainted to some degree, I hereby recuse myself from all further proceedings in this matter....

[¶ 5] The new trial on the motion was held in July 1998 before a different judge. After the hearing, the court entered an order denying Zich's motion on two grounds: (1) Zich is not a parent entitled to custody of the children for purposes of bringing a motion under N.D.C.C. § 14–09–07 to move the children from this state;

and (2) Zich failed to demonstrate the move would be in the children's best interests. Zich appealed.

## II

[¶ 6] Under N.D.C.C. § 14–09–07 "[a] parent entitled to the custody of a child" must get judicial permission to change the child's residence to another state if the other parent does not consent to the move. The trial court found "the children spend virtually equal amounts of time with both parties," and concluded Zich "is not a parent entitled to custody" under this provision and, therefore, is not entitled to seek permission to move with the children to another state. We conclude the trial court's interpretation and application of this statute is much too narrow.

[¶ 7] In its January 1997 order for amendments to the judgment, the court designated Zich the "primary custodian" of the children. Clearly, she is a "parent entitled to the custody" of the children. Although both parents have physical custody of the children for significant amounts of time, under the judgment Zich has physical custody more of the time than does Tibor. N.D.C.C. § 14–09–07 "specifically requires a custodial parent to seek permission" to change the children's residence to another state. *Hanson v. Hanson,* 1997 ND 151, ¶ 8, 567 N.W.2d 216. For purposes of N.D.C.C. § 14–09–07, assuming both parties had physical custody of the children for equal amounts of time, each would be deemed a parent entitled to custody and each would be required to seek court authorization to relocate the children out of state. We agree with the analysis of the Minnesota courts. Even where there is joint legal custody or joint legal and physical custody, the statute governing a change of the child's residence applies. The party seeking relocation must comply with the statutory requirements. *Silbaugh v. Silbaugh,* 543 N.W.2d 639, 641 (Minn.1996); *Ayers v. Ayers,* 508

N.W.2d 515, 521 (Minn.1993). We conclude N.D.C.C. § 14–09–07, applies and requires Zich to seek court approval to move with the children to Georgia.

### III

[¶ 8] The purpose of N.D.C.C. § 14–09–07 is to protect the noncustodial parent's visitation rights if the custodial parent wants to move out of state. *Hanson*, 1997 ND 151, ¶ 10, 567 N.W.2d 216. The custodial parent has the burden of proving the proposed move is in the best interests of the children. *Keller v. Keller*, 1998 ND 179, ¶ 10, 584 N.W.2d 509. A trial court's decision whether the move is in the best interests of the children is a finding of fact which will not be overturned on appeal unless it is clearly erroneous. *Id.* A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made. *Id.*

[¶ 9] To determine whether the move is in the children's best interests, the court must apply a four-factor analysis enunciated by this Court in *Stout v. Stout*, 1997 ND 61, ¶ 34, 560 N.W.2d 903:

1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,

2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,

3. The integrity of the noncustodial parent's motives for opposing the move, [and]

4. Whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and

fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.[1]

[¶ 10] Although the trial court determined Zich was not entitled to bring the motion under N.D.C.C. § 14–09–07, it nevertheless determined the merits of the motion and, after considering the four factors, found Zich had failed to meet her burden of demonstrating the requested move would be in the children's best interests. Because the trial court applied an erroneous interpretation of *Stout* and because we are left with a definite and firm conviction the trial court made a mistake, we conclude the trial court's finding the move is not in the children's best interests is clearly erroneous.

### A

[¶ 11] Under the first *Stout* factor the trial court must weigh the advantages of the requested move "while recognizing the importance of maintaining continuity and stability in the custodial family." *Hawkinson v. Hawkinson*, 1999 ND 58, ¶ 11, 591 N.W.2d 144. A trial court's failure to give sufficient credence to the need for keeping the custodial family intact constitutes reversible error. *Goff v. Goff*, 1999 ND 95, ¶ 14, 593 N.W.2d 768. The court must give due weight to the possibility the move will enhance both the economic and non-economic aspects of the custodial family's life. *Id.* This factor must be considered in light of the importance of maintaining the stability of the custodial parent/child relationship. *Hawkinson*, 1999 ND 58, ¶ 12, 591 N.W.2d 144; *Goff*, 1999 ND 95, ¶ 13, 593 N.W.2d 768.[2]

---

1. Subsequent to the trial court's decision in this case, we clarified in *Hawkinson v. Hawkinson*, 1999 ND 58, ¶ 9, 591 N.W.2d 144, that in deciding whether the requested move is in the best interests of the child the court must consider under factor four "[t]he potential negative impact on the relationship be-

tween the noncustodial parent and the child...."

2. In fairness to the trial judge, we recognize he did not have the benefit of the *Hawkinson* and *Goff* opinions in deciding this case.

[¶ 12] The trial court found the evidence did not demonstrate the children's quality of life would be improved by permitting the move. In making that finding, the trial court afforded little consideration to keeping the custodial family intact. The trial court recognized Terrence Zich's job prospects in North Dakota are "limited or nonexistent," and the Georgia job is permanent and pays $60,000 per year plus benefits. The court found "Kathleen's quality of life as measured by income would likely improve should she move to Georgia." Unexplainably, however, the court found "no evidence suggests the children's quality of life by that measurement would improve."

[¶ 13] The children's best interests are inextricably interwoven with the quality of life of the custodial parent, with whom they live and upon whom they rely emotionally. *Stout,* 1997 ND 61, ¶ 44, 560 N.W.2d 903. "A move which benefits the health and well-being of a custodial parent is certainly beneficial to the parent's child, and is consequently in the child's best interests." *State ex rel. Melling v. Ness,* 1999 ND 73, ¶ 9, 592 N.W.2d 565. "It is axiomatic that a newly-wed couple wants to live together and that the child is benefitted by the satisfaction that the custodial parent derives from residing with her spouse." *Matter of B.E.M.,* 1997 ND 134, ¶ 16, 566 N.W.2d 414.

[¶ 14] There is also a direct relationship between a stepparent's financial situation and the circumstances of a spouse's dependent children, because a stepparent is liable to support a spouse's dependent children if he receives them into the family and for as long as they remain in the stepparent's family. N.D.C.C. § 14–09–09; *see also Braun v. Braun,* 532 N.W.2d 367, 370 (N.D.1995). A stepparent naturally takes on a family relationship with children of a spouse and becomes part of the integrated family unit. *Hawkinson,* 1999 ND 58, ¶ 11, 591 N.W.2d 144. When a stepparent's career takes him or her out of state to secure a job, allowing the spouse and the spouse's children to also relocate to that place is crucially important to maintaining family continuity and stability. *Id.*

[¶ 15] This case is factually similar to the circumstances in *Paulson v. Bauske,* 1998 ND 17, ¶ 12, 574 N.W.2d 801. The custodial parent in *Paulson* remarried and her new husband, who had a zoology degree, found a promising position in Colorado after a business venture in this area failed. Her husband accepted the position in Colorado, and she requested the court's approval to relocate there with the children. This Court reversed the trial court's denial of her request for permission to move, recognizing the stepparent's career and job opportunities in Colorado made the move "necessary to keep this family intact." *Id.* While recognizing the lack of job opportunities for Terrence Zich in this area and the advantages of the career position available to him in Georgia, the trial court failed to give adequate consideration of the need to keep the custodial family unit together.

[¶ 16] The trial court paid little or no attention to other advantages this move affords the custodial family. Under the status quo, the custodial family is maintaining two separate households. The move would eliminate the cost and time expended in supporting the second household. The record evidence also demonstrates that, if allowed to move to Georgia with the children, the family could live on Terrence Zich's income and Kathleen Zich has an opportunity to extend the time she spends directly caring for the three children.

[¶ 17] The trial court found a benefit for the children remaining in this area near Tibor's extended family. Although the court recognized Zich's extended family lives in Georgia, it discounted the advantage to the children being nearer those relatives, because the children "have spent limited time with them over the years." Nevertheless, the record evidence shows

the children have a positive relationship with Zich's family. With extended families in both locations, the evidence does not support a finding that either location would provide an advantage in this regard.

[¶ 18] The record evidence is undisputed all three children are doing very well in school and do not suffer from any emotional problems. Gregory Arbach, a clinical social worker at Medcenter One, provided counseling services for the family. He testified the children would adjust very well to the move and there would be no major adverse effect on them. Arbach testified all three daughters expressed a preference and willingness to move to Georgia. A child's preference, in the context of a motion to move a child from this state, is an appropriate factor the court may consider in determining the child's best interests. *Sumra v. Sumra*, 1997 ND 62, ¶ 14, 561 N.W.2d 290. There is also record evidence Macon, Georgia, offers excellent schools, nearby worship facilities of the family's choosing, and good medical facilities, with a close allergy and asthma clinic to attend to one child's asthma. The trial court gave little or no regard to this evidence.

[¶ 19] We conclude the trial court did not afford sufficient consideration to the evidence of the advantages of this move, especially in the context of maintaining the continuity and stability of the custodial family unit. We conclude, therefore, the trial court's finding Zich did not demonstrate the move would involve prospective advantages to improve the children's quality of life is clearly erroneous.

## B

[¶ 20] Under the second *Stout* factor the court must consider the custodial parent's motives for the move. The trial court found Zich's motives for relocating the children were appropriate and not based on any intent to defeat or deter Tibor's visitation. The evidence supports this finding.

## C

21] Under the third *Stout* factor the court must consider the noncustodial parent's motives for opposing the move. The trial court found Tibor's motives "may be other than the best interests of the children." The court found Tibor "has exhibited obsessive feelings" toward Zich in the past, as evidenced by his entering Zich's home to check telephone messages and mail and his rummaging through her trash to find information about the potential move out of state. The court found Tibor was emotionally abusive toward Zich during the marriage and has been both physically and emotionally abusive toward his second wife. The court found Tibor used physical and emotional means to control his second wife, and the court stated "[c]ontinued abuse by [Tibor] toward [his second wife] could result in a change in my view of what is in the best interests of the children."

[¶ 22] Tibor's surveillance of Zich and intrusion into her residence and belongings demonstrates an unhealthy obsession and desire by him to control others. Tibor's physical and emotional abuse of his second wife also demonstrates an obsession to control others. Although not directed toward the children, this conduct presents a negative influence and unsettling interference in the children's lives. The trial court found a lack of integrity in the father's motives for opposing the move and the evidence supports that finding.

## D

[¶ 23] Under the fourth *Stout* factor the court must consider the negative impact of the move on the noncustodial parent's relationship with the children and the ability to restructure visitation to foster and preserve the relationship. In applying factor four, the court stated consideration of whether visitation could be restructured to preserve the noncustodial parent/child relationship "applies only if the other factors require allowing the move." This is an

erroneous application of our law. The court must consider the potential of restructured visitation together with the other three factors in determining whether it is in the children's best interests to allow the requested move. *See Goff*, 1999 ND 95, ¶ 9, 593 N.W.2d 768.

[¶ 24] The trial court found if the move were allowed, "there is no way the same quality of relationship would be maintained." Even though a move may add costs and distance to visitations, making it impossible to continue the frequency of visits between the noncustodial parent and child, the relationship between them can be preserved by a restructured visitation schedule. *Keller*, 1998 ND 179, ¶ 16, 584 N.W.2d 509. If this were not recognized, this factor would constitute an unintentional, automatic reason to deny relocation. *Id.* A visitation schedule which provides less frequent, but extended, visitation periods will preserve a noncustodial parent's ability to foster and develop a relationship with the child. *Goff*, 1999 ND 95, ¶ 18, 593 N.W.2d 768. A move must not be denied simply because visitation cannot continue in the existing pattern. *Id.* at ¶ 17.

[¶ 25] Zich offered a very generous alternative visitation schedule, including six weeks of uninterrupted visitation in the summer, one week each Christmas, every other Thanksgiving, every Spring break, and every other Easter. She offered to split the cost of transportation for the visitations and offered to cooperate with visitations anytime Tibor wanted to see the children in Georgia. She testified she would comply with any visitation schedule the court ordered even if it provided more visitation time than what she had proposed.

[¶ 26] Although Georgia is a considerable distance from North Dakota, modern transportation reduces the measure of distance from days to hours, and instant communication is available through phone and cable links. *Sumra*, 1997 ND 62, ¶ 17, 561 N.W.2d 290. Zich testified she also favored additional methods for ensuring the children maintain a relationship with their father, including the daily use of e-mail messages, making frequent telephone calls, and sending video tapes. We conclude the trial court's finding visitation could not be restructured to preserve and foster the children's relationship with Tibor is clearly erroneous.

## IV

[¶ 27] When the relevant factors weigh in favor of the custodial parent's request to relocate the children, the trial court's denial of the motion constitutes reversible error. *Stout*, 1997 ND 61, ¶ 52, 560 N.W.2d 903. Having carefully reviewed the record evidence, we conclude the trial court's finding Zich failed to prove the move is in the best interests of the children is clearly erroneous.

[¶ 28] In *Goff*, 1999 ND 95, ¶ 22, 593 N.W.2d 768, we concluded the trial court's findings under the first and fourth *Stout* factors were based upon erroneous interpretations of the law. Under those circumstances, we reversed the trial court's decision denying a request for relocation and remanded for the court to reconsider the motion under a correct interpretation of the law. In this case, we are left with a definite and firm conviction the trial court's findings that Zich failed to introduce sufficient evidence to demonstrate the advantages of the move and that visitation could not be restructured to preserve the children's relationship with their father are clearly erroneous. Further, unlike *Goff*, the trial court found the father's motives for opposing the move lacked integrity as they were not focused on the interests of the children. We conclude, as a matter of law, the record evidence in this case demonstrates the requested move is in the children's best interests. Under these circumstances, it is appropriate to reverse and remand for establishment of an appropriate visitation schedule. *See Keller*, 1998 ND 179, ¶ 20, 584 N.W.2d 509;

*Paulson,* 1998 ND 17, ¶ 17, 574 N.W.2d 801; *Stout,* 1997 ND 61, ¶ 55, 560 N.W.2d 903.

[¶ 29] We reverse the order of the district court denying Zich's motion to relocate with the children to Georgia and remand with instructions the court enter an order granting the motion and establishing an appropriate visitation schedule.

[¶ 30] GERALD W. VANDE WALLE, C.J. and MARY MUEHLEN MARING, J., concur.

NEUMANN, Justice, concurring specially.

[¶ 31] I concur in the result reached by the majority. I write separately because of the continuing difficulty we have in the application of N.D.C.C. § 14–09–07, as this Court has interpreted it.

[¶ 32] Section 14–09–07, N.D.C.C., states:

A parent entitled to the custody of a child may not change the residence of the child to another state except upon order of the court or with the consent of the noncustodial parent, if the noncustodial parent has been given visitation rights by the decree. A court order is not required if the noncustodial parent:

(1) has not exercised visitation rights for a period of one year; or

(2) has moved to another state and is more than fifty miles [80.47] kilometers from the residence of the custodial parent.

The limited purpose of this statute is to safeguard the visitation rights of the noncustodial parent. *Stout v. Stout,* 1997 ND 61, ¶ 12, 560 N.W.2d 903. Under the statute a custodial parent must get judicial permission to move the child to another state if the noncustodial parent objects to the move. *Goff v. Goff,* 1999 ND 95, ¶ 5, 593 N.W.2d 768. This Court has decided that to obtain judicial permission, the burden is on the custodial parent to prove the move is in the best interests of the child.

*Burich v. Burich,* 314 N.W.2d 82, 84–85 (N.D.1981).

[¶ 33] I believe the burden imposed by this Court on the custodial parent, the burden of proving the move is in the best interests of the child, is misplaced. As this Court has stated, a request to move is not a redetermination of custody. *Stout,* 1997 ND 61, ¶ 54, 560 N.W.2d 903. In fact, custody is not the issue in a motion to relocate. *Id.* at ¶ 54. Yet, under *Burich,* this Court requires the custodial parent prove their decision to move is in the best interests of the child, a standard otherwise applied only in initial determinations of custody. *See Zimmerman v. Zimmerman,* 1997 ND 182, ¶ 7, 569 N.W.2d 277; *Hendrickson v. Hendrickson,* 553 N.W.2d 215, 216 (N.D.1996).

[¶ 34] I believe a much more realistic approach to motions for relocation is a presumption that the proposed move is in the best interests of the child, coupled with an opportunity for the noncustodial parent to submit opposing evidence, if desired, to try to overcome the presumption.

[¶ 35] Minnesota has a relocation statute very similar to N.D.C.C. § 14–09–07. *Stout,* 1997 ND 61, ¶ 15, 560 N.W.2d 903. Section 518.175(3), Minn.Stat., states:

The custodial parent shall not move the residence of the child to another state except upon order of the court or with the consent of the noncustodial parent, when the noncustodial parent has been given visitation rights by the decree. If the purpose of the move is to interfere with visitation rights given to the noncustodial parent by the decree, the court shall not permit the child's residence to be moved to another state.

The Minnesota Supreme Court has found a presumption favoring removal of the child is the best approach for motions for relocation for several reasons:

First, in most cases it would obviate de novo consideration of who is best suited to have custody, an issue which has already been resolved once by the courts.

Unless the noncustodial parent could establish by a preponderance of the evidence that removal would not be in the child's best interests, permission to remove would be granted. Second, it would tend to maintain the child in the family unit to which he or she currently belongs, and minimize judicial interference with decisions which affect that family unit. Third, it is grounded in Minnesota's statutory scheme. Finally, it places the decision with the person best able to consider the child's needs.

*Auge v. Auge*, 334 N.W.2d 393, 399 (Minn. 1983).

[¶ 36] This Court has previously considered presumptions in the relocation context. In *Olson v. Olson*, 361 N.W.2d 249 (N.D.1985), this Court rejected the idea of a presumption. *Id.* at 252. We held placing the burden on the custodial parent was consistent with the statutory right of visitation rights between the noncustodial parent and the child. *Id.* This Court also distinguished *Auge*, asserting Minnesota's statutory provisions were significantly different from our own, *id.*, a difference I fail to see.

[¶ 37] It is my belief, nineteen years after our decision, that *Olson* should be overturned. Recent legislative enactments clearly indicate a legislative policy in favor of continuity and stability in the existing custodial arrangement. *See* N.D.C.C. § 14–09–06.6 (1997). Furthermore, our recent relocation cases direct our courts to carefully tailor visitation schedules to preserve the noncustodial parent's right to foster and develop a relationship with the child. *Keller v. Keller*, 1998 ND 179, ¶ 16, 584 N.W.2d 509; *Matter of B.E.M.*, 1997 ND 134, ¶ 20, 566 N.W.2d 414. These recent developments suggest our analysis in *Olson* is outdated, and that in fact, today we are closer to Minnesota's underlying statutory and public policy than we were when *Olson* was decided. Clearly, the noncustodial parent's right to visitation can be protected even if there is a presumption favoring a proposed move.

[¶ 38] Application of N.D.C.C. § 14–09–07 has caused confusion and difficulty for both parents and courts since *Burich* injected a best interest standard and placed the burden of proof on the custodial parent. Recent attempts to clarify the law seem unavailing. In *Stout*, this Court attempted to bring some clarification to these cases by stating whether a move was in a child's best interest could be determined by an analysis of four factors:

1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,

2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,

3. The integrity of the noncustodial parent's motives for opposing the move,

4. Whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

*Stout*, 1997 ND 61, ¶ 34, 560 N.W.2d 903. At the time, *Stout's* factors seemed to a majority of this court to provide the illumination these cases desperately required. However, a look at cases following *Stout* reveals the difficulty our courts continue to have in applying the statute. Including this case, this Court has reversed and remanded four cases applying the *Stout* factors, with three of the cases directing the district court to grant the motion to move. *See Goff*, 1999 ND 95, ¶ 22, 593 N.W.2d 768 (reversing and remanding for a redetermination of two factors); *Keller*, 1998 ND 179, ¶ 20, 584 N.W.2d 509 (reversing and remanding directing district court to allow the move and establish visitation); *Paulson v. Bauske*, 1998 ND 17, ¶ 17, 574 N.W.2d 801 (reversing and remanding with directions to enter judgment allowing the move). In addition, we re-

cently attempted to clarify the *Stout* factors in *Hawkinson v. Hawkinson,* 1999 ND 58, ¶ 9, 591 N.W.2d 144 (restating the fourth *Stout* factor).

[¶ 39] When this Court decided *Stout,* the express goal was to give trial court's more instructive and specific guidance in applying N.D.C.C. § 14–09–07. *Stout,* 1997 ND 61, ¶ 28, 560 N.W.2d 903. In the year and a half since *Stout,* I am afraid our goal has not been accomplished.

[¶ 40] This Court should move toward a presumption that the proposed move is in the best interests of the child. I believe such a presumption would not be contrary to the purposes of N.D.C.C. § 14–09–07, and would be in harmony with our State's legislative policy. By implementing such a presumption we would be establishing clear guidance for our courts without threatening the well-being of the children. I also encourage the North Dakota Legislative Assembly to consider legislatively creating such a presumption as a part of N D.C.C. § 14–09–07. If this Court erred in *Burich* and *Olson,* then such an amendment would be a great service to divorced parents, eliminating one more opportunity to renew a lingering dispute that hampers their efforts to get on with the rest of their lives.

[¶ 41] William A. Neumann

SANDSTROM, Justice, concurring and dissenting.

[¶ 42] I agree with the majority that Kathleen Zich is a person entitled to custody under N.D.C.C. § 14–09–07.

[¶ 43] I would not retry the case and substitute my judgment for that of the trial court. *See Goff v. Goff,* 1999 ND 95, ¶¶ 31–38, 593 N.W.2d 768 (Sandstrom, J., dissenting).

[¶ 44] Dale V. Sandstrom