2001 ND 69

**Tiffani HENTZ, n/k/a Tiffani Milligan, Plaintiff and Appellant,**

v.

**Rory HENTZ, Defendant and Appellee.**

No. 20000239.

Supreme Court of North Dakota.

April 12, 2001.

Daniel H. Oster (argued) and Brenda A. Neubauer, Neubauer & Oster, Bismarck, for plaintiff and appellant.

Timothy J. Wahlin, Kelsch, Kelsch, Ruff & Kranda, Mandan, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Tiffani Milligan, formerly known as Tiffani Hentz, appealed from findings of fact, conclusions of law, and order for

amended judgment[1] in her divorce action against Rory Hentz. We conclude the trial court's decision that changing the residence of the parties' child to Montana would not be in the child's best interest is not clearly erroneous. We affirm the amended judgment.

[¶ 2] The parties married in 1994. One child, Rick James Hentz, was born to them in 1997. Milligan sued Hentz for a divorce in 1998. The trial court[2] denied Milligan's request to change the child's residence to Montana. The court found Milligan "demonstrated unreasonable behavior in withholding contact between father and son during the interim of this divorce proceeding" and "her lack of objectivity regarding Rick's relationship with his father would probably have the effect of obstructing their contact if she were out of state." The judgment ordered a divorce; granted the parties joint custody of their son, with actual physical custody awarded to Milligan and visitation awarded to Hentz; and provided Hentz was "entitled to have Rick in his care each day for the four to five hours during which time Tiffani is at work and Rory is at home … Monday through Friday" and "each Sunday between the hours of 1:00 p.m. and 5:00 p.m." The judgment also provided Hentz was entitled to one week of overnight visitation the second full week of June and the second full week of August, during which time Hentz was authorized to travel out of state with Rick. The judgment prohibited Milligan from changing Rick's residence outside North Dakota, except in accordance with N.D.C.C. § 14–09–07.

[¶ 3] In June 1999, Milligan refused to allow Hentz visitation with their son for a scheduled out-of-state vacation. The trial court[3] found Milligan in civil contempt of court for failing to obey the visitation pro-

visions of the divorce judgment, directed Milligan to pay Hentz $1,603 in compensation, and granted Hentz overnight visitation with Rick one night each week.

[¶ 4] On February 23, 2000, Milligan moved for permission to relocate Rick to Montana. The trial court[4] denied Milligan's request. An amended judgment was entered June 29, 2000. On appeal, Milligan contends "the trial court's denial of move on grounds that it was not in the child's best interests was clearly erroneous."

[2–4] [¶ 5] If a noncustodial parent has been given visitation rights by decree, N.D.C.C. § 14–09–07 provides a custodial parent "may not change the residence of the child to another state except upon order of the court or with the consent of the noncustodial parent." The purpose of N.D.C.C. § 14–09–07 is to protect the noncustodial parent's visitation rights if the custodial parent wants to move out of this state. *Olson v. Olson*, 2000 ND 120, ¶ 4, 611 N.W.2d 892; *Hanson v. Hanson*, 1997 ND 151, ¶ 10, 567 N.W.2d 216. "It has long been the policy in this state that 'the best interests of the child' is the primary consideration in determining whether or not a custodial parent may change the residence of the child." *Stout v. Stout*, 1997 ND 61, ¶ 9, 560 N.W.2d 903. A custodial parent seeking a court order permitting a change in a child's residence to another state under N.D.C.C. § 14–09–07 "must prove, by a preponderance of the evidence, that the move is in the best interests of the child." *Stout*, at ¶ 9. *See also Tishmack v. Tishmack*, 2000 ND 103, ¶ 7, 611 N.W.2d 204; *Keller v. Keller*, 1998 ND 179, ¶ 10, 584 N.W.2d 509.

[¶ 6] A trial court's decision whether a proposed move to another state

---

1. We treat this as an appeal from the subsequently entered consistent amended judgment. *See, e.g., Gietzen v. Gietzen*, 1998 ND 70, ¶ 1 n. 1, 575 N.W.2d 924; *Wolf v. Anderson*, 422 N.W.2d 400, 400 n. 1 (N.D. 1988).

2. The Honorable Burt L. Riskedahl.

3. The Honorable Burt L. Riskedahl.

4. The Honorable Thomas J. Schneider.

is in the best interest of a child is a finding of fact which will not be overturned on appeal unless it is clearly erroneous. *Tibor v. Tibor,* 1999 ND 150, ¶ 8, 598 N.W.2d 480. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made." *Id.* "In reviewing a trial court's findings of fact, which are presumptively correct, we view the evidence in the light most favorable to the findings." *Olson,* 2000 ND 120, ¶ 4, 611 N.W.2d 892. "We do not reweigh evidence or reassess credibility where there is evidence to support a trial court's findings." *Tishmack,* 2000 ND 103, ¶ 7, 611 N.W.2d 204. We will not reverse a trial court decision merely because we might have viewed the evidence differently. *State ex rel. Younger v. Bryant,* 465 N.W.2d 155, 158 (N.D.1991). A choice between two permissible views of the weight of the evidence is not clearly erroneous. *Tishmack,* at ¶ 7.

[¶ 7] We have specified four factors for consideration in determining if a requested change in a child's residence to another state is in the child's best interest:

1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,

2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,

3. The integrity of the noncustodial parent's motives for opposing the move,

4. The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood

that each parent will comply with such alternate visitation.

*Olson,* 2000 ND 120, ¶ 5, 611 N.W.2d 892, quoting *Hawkinson v. Hawkinson,* 1999 ND 58, ¶¶ 6 and 9, 591 N.W.2d 144. "No one factor dominates, and a factor that has minor impact in one case may be the dominant factor in another." *State ex rel. Melling v. Ness,* 1999 ND 73, ¶ 8, 592 N.W.2d 565. "When the relevant factors weigh in favor of the custodial parent's request to relocate the children, the trial court's denial of the motion constitutes reversible error." *Tibor,* 1999 ND 150, ¶ 27, 598 N.W.2d 480. "[A] move sought in good faith and to gain legitimate advantages for the custodial parent and the child must not be denied simply because visitation cannot continue in the existing pattern." *Stout,* 1997 ND 61, ¶ 37, 560 N.W.2d 903. *See also Olson,* 2000 ND 120, ¶ 4, 611 N.W.2d 892; *Tibor,* at ¶ 24.

[¶ 8] The trial court explained its analysis of the four factors in a memorandum opinion. With regard to the first factor, the trial court found:

Clearly the first factor favors allowing Ms. Milligan to move to Montana. Ms. Milligan and the child would benefit from a support system of close family members in Montana. Financially, Ms. Milligan and the child would be better off in Montana. She would be working at a higher paying job in Montana. A college education would improve her future financial outlook. Her parents would assist her financially and they would provide daycare at no cost to her.

As to the second factor, the trial court found: "I do not believe Ms. Milligan's request to move to Montana is entirely intended to defeat or deter visitation by Mr. Hentz.... Besides having no ties to North Dakota, financially and emotionally she is having a very difficult time in North Dakota." On the third factor, the trial court found: "There is nothing in the record which would lead me to believe that Mr. Hentz is motivated by anything other

than his concern for his relationship for his son." Primarily concerned with the potential for noncompliance with visitation provisions, the trial court addressed the fourth factor at length:

Clearly there will be less opportunity for Mr. Hentz to build a relationship with his son if the move is allowed. This certainly would be a negative impact on the relationship between Mr. Hentz and his son.

Even if this Court modified the visitation schedule to include less frequent but more extended periods of time for visitation with the child by Mr. Hentz, the Court is concerned that Ms. Milligan will not comply with the alternative visitation once she is out of state.

Judge Riskedahl previously found that the record indicates that Ms. Milligan demonstrated unreasonable behavior in withholding contact between father and son during the interim of the divorce proceeding. Furthermore, Judge Riskedahl stated that Ms. Milligan's lack of objectivity regarding the child's relationship with his father would probably have the effect of obstructing their contact if Ms. Milligan were out of state. Furthermore, after the divorce was final, Ms. Milligan was found to be in contempt of court for failing to obey provisions in the Judgment of this action relating to visitation.

This factor weighs most heavily against allowing the move to Montana.

After analyzing the factors set by the North Dakota Supreme Court in *Stout* and *Hawkinson*, I am of the opinion that the move to Montana should not be allowed. My concern is that once Ms. Milligan is out of state with the child she will not comply with a visitation order.

Furthermore, I agree with Judge Riskedahl when he stated "The Court is persuaded that Rick's development will be enhanced by regular contact with his father* * *." If the move were allowed, there would be no regular contact between father and son.

In its conclusions of law, the trial court stated its ultimate finding of fact supporting its denial of Milligan's motion to change the residence of the parties' child to Montana: "The change of residence Plaintiff seeks would not be in the child's best interest as defined by the considerations in *Stout v. Stout*, 560 N.W.2d 903 (N.D.1997); and clarified in *Hawkinson v. Hawkinson*, 591 N.W.2d 144 (N.D.1999)."

[¶ 9] Our prior decisions, such as *Olson v. Olson*, 2000 ND 120, ¶ 4, 611 N.W.2d 892; *Tibor v. Tibor*, 1999 ND 150, ¶ 24, 598 N.W.2d 480; and *Stout v. Stout*, 1997 ND 61, ¶ 37, 560 N.W.2d 903, have held the fact a noncustodial parent will not be able to maintain the same visitation schedule is not, alone, a basis for denying permission to the custodial parent to leave the state with the child. Notwithstanding the last sentence of the trial court's decision quoted above, it is apparent it was the concern that Milligan would not comply with the visitation order and foster the noncustodial parent's relationship with the child that caused the trial court to deny the move.

[¶ 10] From our review of the record, we conclude there is evidence supporting the trial court's analysis of the factors appropriate in determining Milligan's request to move the child to Montana, and the court's finding the proposed move would not be in the child's best interest, which, we further conclude, is not clearly erroneous.

[¶ 11] Milligan made a number of related contentions about visitation in her brief:

The trial court placed substantial weight on the fact that Tiffani was previously found in contempt for failing to obey provisions in the Judgment relating to visitation. (A: 67, A: 33). The finding of contempt was based on one isolated incident in the summer of 1999 when Tiffani withheld visitation....

The trial court placed too much weight on an isolated incident in denying Tiffani's request to move....

. . .

Specifically the trial court found that "the Court is concerned that Ms. Milligan will not comply with the alternative visitation once she is out of state." (A: 67). The finding is not supported by the record.

 [¶ 12] We have already determined there is evidence supporting the trial court's findings. While the finding of contempt was based on one incident in 1999, that incident was not the only time Milligan has withheld visitation. In its 1998 findings of fact, the trial court found Milligan "demonstrated unreasonable behavior in withholding contact between father and son during the interim of this divorce proceeding." We have held the remoteness of an incident is a matter for the court to consider in weighing the evidence before it. *Steckler v. Steckler*, 492 N.W.2d 76, 81 (N.D.1992). Milligan's past behavior was a relevant fact for the trial court to weigh in considering her motion.

"Although it is impossible to be certain what might occur in the future, any prediction of the future requires some reflection into the past conduct of the parties." *Reede v. Steen*, 461 N.W.2d 438, 442 (N.D. 1990). Milligan conceded at oral argument that moving to Montana could create more visitation enforcement problems. There is evidence in the record supporting the trial court's findings. We will not reweigh the evidence and we view it in the light most favorable to the findings.

[¶ 13] The amended judgment is affirmed.

[¶ 14] SANDSTROM, KAPSNER, MARING and NEUMANN, JJ., concur.