2000 ND 132

**Walter D. WAGNER, Plaintiff and Appellee,**

v.

**Bernadette WAGNER, Defendant and Appellant.**

No. 20000012.

Supreme Court of North Dakota.

June 29, 2000.

See also 579 N.W.2d 207.

Rauleigh D. Robinson, Bismarck, N.D., for plaintiff and appellee.

Patricia E. Garrity, Bair, Bair & Garrity, LLP, Mandan, N.D., for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Bernadette Wagner appealed from an amended divorce judgment incorporating a bankruptcy stipulation into the judgment. We modify the judgment and, as modified, we affirm.

I

[¶ 2] Under a March 15, 1996 divorce decree, Bernadette received a quarter section of land, personal property, attorney fees, and a cash payment cumulatively valued at $120,000. Walter Wagner received 3,080 acres of land and personal property cumulatively valued at $1,069,146.09. The judgment assigned Bernadette $205.50 in debt and Walter $884,573.46 in debt, and ordered Walter to pay spousal support of $500 per month for 10 years and child support of $751 per month.

[¶ 3] In August 1996, the trial court denied Walter's motion to reduce his child support obligation. In February 1997, the court found Walter in civil contempt for failing to comply with provisions of the divorce decree for spousal support, attorney fees, and property division. The court said "Since the judgment was entered, [Walter] has purposely placed himself in a position so that he is unable to comply with the terms of the Judgment." The court ordered Walter to serve 30 days in jail, beginning on April 2, 1997, unless he purged himself of the contempt. On March 31, 1997, Walter filed a voluntary petition in bankruptcy court, claiming he was unable to pay creditor claims and to comply with the financial obligations under the divorce decree.

[¶ 4] In May 1997, Walter moved to reduce or eliminate his child support obligation, claiming his farm income had decreased dramatically. Initially, the trial court summarily denied Walter's motion, and we temporarily remanded for specific findings of fact. See Wagner v. Wagner,

1998 ND 117, ¶¶ 6–7, 579 N.W.2d 207 (*Wagner I*). In a March 1998 amended judgment, the trial court ultimately set Walter's child support obligation at $750 per month, and found, since entry of the original judgment, he had purposely rendered himself unable to comply with the terms of the judgment. In *Wagner I*, at ¶ 12, we affirmed the court's decision requiring Walter to pay $750 per month for child support.

[¶ 5] Meanwhile, Bernadette brought an adversary proceeding in bankruptcy court, claiming cash property payments, accrued interest, spousal support, and attorney fees awarded in the divorce decree were not dischargeable. In January 1998, Walter and Bernadette entered a stipulation in the bankruptcy proceeding regarding their property and support disputes. On January 23, 1998, the bankruptcy court approved the stipulation and dismissed Bernadette's adversary proceeding with prejudice. The stipulation specified it "shall be treated as an amendment to the divorce decree." Under the stipulation, Walter agreed to pay Bernadette $2,000 per month for ten years commencing on January 15, 1998. The stipulation allocated $750 for child support, $500 for spousal support, and $750 as a property settlement. Paragraph F of the stipulation allowed Walter to liquidate the parties' land, machinery, and equipment at an auction if he was unable to pay the $2,000 per month:

> (F) *Option to Sell the Land and Machinery.* The parties agree that in the event Walter is unable to realistically make payments in the amount of $2,000.00 per month, rendering the terms of Paragraphs (A) and (B) of this Agreement unworkable, Walter shall be entitled to exercise his option to liquidate the land and equipment and machinery. Any and all tools and personal property, including personal vehicles, of Walter shall not be required to be liquidated. In the event there is a complete liquidation of all the parties['] land and equipment and machinery and after payment of all valid, currently existing, secured claims on machinery and mortgages on real estate, real estate taxes, and the IRS tax liability, Bernadette and Walter shall split the remaining proceeds as set forth below. Bernadette's portion of the distribution shall be reduced by all payments made toward property distribution that Walter has made from the date of January 15, 1998 to the date of the distribution of the proceeds. Distribution of Bernadette's share of the proceeds to her from the sale shall constitute satisfaction of the property settlement payments; thus relieving Walter from any further property settlement obligation. It is agreed that Walter may exercise the option to liquidate the land and machinery and equipment at any time. In the event Walter elects to sell, each item of machinery or parcel of land shall be sold for an amount as close to its fair market value as possible and as determined by appraisal. In the event the property is sold at auction, the highest bid offered shall be the acceptable sale price. Walter may choose an appraiser, agreeing that he will not use Herman Schumacher, Joe Vetter or Paul Schafner. The fees and cost of the appraisal shall be shared equally between the parties. If the parties cannot agree on an appraiser, each may select and pay for their own appraisal. The fair market value shall then be the average between the two appraisals. If the sale is by public auction, Walter shall submit the names of three (3) auctioneers to Bernadette, excluding the names of Herman Schumacher, Joe Vetter and Paul Schafner. Bernadette shall select the auctioneer from the list of three names. Walter's obligations to pay child support shall continue at whatever level is set by the Court in an appropriate judicial proceeding. As to spousal support continuing upon liquidation of the real estate, equipment and machinery, Walter shall make payments each month in the

amount of $250.00, unless otherwise determined by court. Walter may seek action in court at any time to reduce or eliminate spousal support in the event of liquidation of the real estate and equipment and machinery. Bernadette may seek action in court at any time to increase or modify spousal support. Walter shall make payments as determined by the court in any action by either party. The parties agree that after all claims are paid, Bernadette shall receive the first $33,000.00. It is further agreed that Walter will receive the next $33,000.00 of assets and the remainder shall be split equally between Bernadette and Walter.

While our temporary remand in *Wagner I* was pending in the trial court, Bernadette moved to incorporate the bankruptcy stipulation into the divorce judgment. The record does not reflect any contemporaneous action on Bernadette's motion.

[¶ 6] Walter failed to pay the $2,000 due under the stipulation on January 15, 1998, and informed Bernadette he intended to liquidate the parties' land, machinery, and equipment. On March 4, 1998, an auction was held and the land, machinery, and equipment were sold.

[¶ 7] On March 27, 1998, Bernadette obtained an ex parte interim order in the divorce action, restraining Walter from closing on the sale of the land. Bernadette moved to rescind the stipulation on the ground Walter had fraudulently induced her to enter into it without intending to perform, and she asked the court to reinstate the divorce decree. She sought to void the sales of machinery and land as fraudulent transfers and to appoint a receiver to sell the land at fair market value. If the court upheld the stipulation and sale, Bernadette alternatively asked the court to find Walter's confessed judgments were fraudulent transfers; she be given priority over Herman Schumacher, an unsecured bankruptcy creditor; and she be paid under the initial divorce decree. As part of Bernadette's alternative request, she asked the court to enter an amended judgment nunc pro tunc to December 15, 1995, the date of the court's initial memorandum decision in the divorce action, to avoid seven confessed judgments entered after the memorandum decision and before filing of the initial divorce decree on March 15, 1996.[1] Walter moved to vacate the ex parte interim order and resisted Bernadette's motions.

[¶ 8] After an August 7, 1998 hearing, the trial court denied Bernadette's motions, and granted Walter's motion to vacate the ex parte interim restraining order. The court found Walter did not fraudulently induce Bernadette to enter into the stipulation, and the auction was not conducted improperly. The court said Bernadette's claim that Walter's confessions of judgment worked a fraud on her would need to be addressed in another proceeding. The court also awarded Bernadette $1,500 for attorney fees for the prior appeal in *Wagner I*. Bernadette requested reconsideration, claiming Walter failed to comply with the stipulation in distributing the proceeds of the auction. The court denied Bernadette's request for reconsideration.

[¶ 9] In *Wagner v. Wagner*, 1999 ND 169, ¶ 16, 598 N.W.2d 855 (*Wagner II* ), we affirmed the trial court's order denying Bernadette's request for a nunc pro tunc modification of the divorce decree. We also concluded the court did not have subject matter jurisdiction to enforce the stipulation as part of the divorce decree because it had never been incorporated into the decree. *Id.* at ¶ 12. Because the stip-

---

1. The record reflects Walter sued Bernadette for a divorce in a complaint dated October 2, 1993. After protracted proceedings, the trial court issued a memorandum opinion dated December 15, 1995, an addendum to the memorandum decision dated January 12, 1996, and a second addendum to the memorandum decision dated February 15, 1996. From February 15 to February 22, 1996, Walter confessed judgments to seven creditors. The parties' original divorce judgment was filed on March 15, 1996.

ulation was never incorporated into the parties' decree, nor made the basis of a separate lawsuit to enforce it as a contract, we held the court was without jurisdiction to rule on it. *Id.* We said our decision left the parties subject to the terms of the March 1998 amended judgment, and we remanded to the trial court, directing it to vacate any order entered regarding the stipulation. *Id.* at ¶ 13. We said the ruling on the ex parte interim restraining order was intrinsically intertwined with issues surrounding the stipulation, and we directed the trial court to reconsider the ex parte order in light of the March 1998 amended judgment, or, in light of the stipulation, if it was properly incorporated into the divorce decree on remand. *Id.*

[¶ 10] On remand the court granted Walter's motion to incorporate the stipulation into the divorce judgment, and an amended judgment was entered effective January 23, 1998.

## II

[¶ 11] On appeal, Bernadette argues the trial court erred in finding Walter did not fraudulently induce her to enter into the stipulation. She argues there is clear and convincing evidence Walter had no intent to pay her $2,000 per month under the stipulation.

[¶ 12] A party alleging fraud must prove it by clear and convincing evidence. *First Nat'l Bank and Trust Co. v. Brakken,* 468 N.W.2d 633, 636 (N.D.1991). Whether fraud exists is treated as a question of fact, and a trial court's determination on that issue will not be set aside on appeal unless clearly erroneous. *Id.* A finding of fact is clearly erroneous if it has no support in the evidence, if, although there may be some evidence to support it, a reviewing court is left with a definite and firm conviction a mistake has been made, or if it is induced by an erroneous conception of the law. *CAP Partners v. Cameron,* 1999 ND 178, ¶ 11, 599 N.W.2d 309. In reviewing findings of fact, we give due regard to the trial court's opportunity to assess the credibility and observe the demeanor of the witnesses. *Miller Enterprises, Inc. v. Dog N' Cat Pet Ctrs.,* 447 N.W.2d 639, 644 (N.D.1989). We will not reverse a trial court's findings merely because we may have viewed the facts differently if we had been the trier of fact. *Id.*

[¶ 13] Here, the parties' stipulation settled issues of spousal support and property division. The stipulation clearly contemplated liquidation of real and personal property if Walter was "unable to realistically make" the $2,000 per month payments and said "Walter may exercise the option to liquidate the land and machinery and equipment at any time." The trial court found the record failed to establish Walter did not intend to fulfill the stipulation even though he defaulted shortly after it was executed. The court found Walter's attorney's testimony indicated the agreement was entered into after extensive negotiations in the belief it could be performed, and Walter's failure to perform was related to his inability to obtain proper operating financing. Although we may have viewed the evidence differently if we had been the trier of fact, we are not left with a definite and firm conviction the court made a mistake in finding Walter did not fraudulently induce Bernadette to enter into the stipulation. The court's finding therefore is not clearly erroneous.

## III

[¶ 14] Bernadette argues the trial court erred in failing to void the sale of the land and the farm equipment at the auction as fraudulent transfers. She claims there were pre-auction maneuverings by Walter which were designed to discourage bidders and were part of his scheme to defraud her.

[¶ 15] The court found the testimony, taken as a whole, did not substantiate Bernadette's claims the auction was conducted improperly, or there was illegal collaboration between Walter and the auctioneer or others to deflate the prices re-

ceived. The court said it viewed a videotape of the auction received into evidence, and found the auctioneer worked strenuously and took considerable time in an attempt to obtain the highest bid possible for the land. The court found Bernadette's evidence indicating the land could have been sold for higher prices if it had been parceled out differently was rebutted by the testimony of Dean Schwartz, a real estate agent who testified he believed the parties received a price commensurate with other comparable sales. The court found the land was purchased in an arm's-length transaction. We are not left with a definite and firm conviction the court made a mistake in finding the sales at the auction were not fraudulent transfers. The court's finding is not clearly erroneous.

### IV

[¶ 16] Bernadette argues the trial court erred in deciding Walter followed the stipulation in disbursing the auction proceeds. Bernadette argues the distribution of the auction proceeds did not follow the terms of the stipulation, which, in relevant part, states:

> In the event there is a complete liquidation of all the parties['] land and equipment and machinery and after payment of all valid, currently existing, secured claims on machinery and mortgages on real estate, real estate taxes, and the IRS tax liability, Bernadette and Walter shall split the remaining proceeds as set forth below.... The parties agree that after all claims are paid, Bernadette shall receive the first $33,-000.00. It is further agreed that Walter will receive the next $33,000.00 of assets and the remainder shall be split equally between Bernadette and Walter.

[¶ 17] The stipulation has been incorporated into the divorce decree and unambiguously identifies how the auction proceeds are to be disbursed. It clearly requires the auction proceeds to be used first for payment of real estate taxes, IRS tax liability, and "all valid, currently existing, secured claims on machinery and mortgages on real estate," and after those payments are made, Bernadette was to receive the first $33,000 in remaining proceeds and Walter the next $33,000, with any remainder split equally between them.

[¶ 18] A proposed auction settlement statement for the sale of the land identifies $324,030 in proceeds from the sale of 1,877 acres of land with $12,961 in expenses for auctioneer's fees and the clerk. The settlement statement identifies $8,600 as estimated real estate taxes; $15,450 for a first mortgage with the Farm Services Agency; $191,386.35 for a second mortgage with the Strasburg State Bank; $43,095.88 for a third mortgage with Herman Schumacher; $19,498.35 plus interest for a judgment filed on February 15, 1996, in favor of O.R. Miller; and $33,038.42 for a judgment filed on February 20, 1996, in favor of Ken Zacher. The statement listed a balance of $24,463.21 for the Zacher judgment and said no proceeds were available for an undetermined income tax liability; a $29,968.54 judgment filed on February 22, 1996, in favor of Todd D. Wagner; a $10,243.94 judgment filed on February 22, 1996, in favor of Jerome Senger; a $30,969.01 judgment filed on February 22, 1996, in favor of Daniel E. Volk; and a $4,480 judgment filed on February 22, 1996, in favor of Donald Nagel.

[¶ 19] Under the plain language of the stipulation, Bernadette was entitled to the first $33,000 in auction proceeds "after payment of all valid, currently existing, secured claims on machinery and mortgages on real estate, real estate taxes, and the IRS tax liability." Under North Dakota law, a mortgage is a contract by which specific real property capable of being transferred is hypothecated for the performance of an act without requiring a change in possession, and includes a transfer of an interest in real property made only to secure the performance of an act. N.D.C.C. § 35–03–01.1. Although a docketed judgment for payment of money is a

lien on the real property, except the homestead, of every person against whom the judgment is rendered, *see* N.D.C.C. § 28-20-13, the plain meaning of a "mortgage on real estate" does not include a judgment lien. Under the original divorce decree, Walter was assigned debts to Herman Schumacher, who was listed as an unsecured creditor in bankruptcy documents, and to the creditors who obtained confessed judgments, and we decline to construe the stipulated language to effectively require Bernadette to pay those debts. Schumacher and the confessed judgment creditors did not have "valid, currently existing, secured claims on machinery and mortgages on real estate" within the meaning of the stipulation. We conclude the part of the auction settlement statement for the sale of land which proposes payment to Schumacher and confessed judgment creditors does not comply with the parties' stipulation. We modify the judgment to require disbursement of $33,000 to Bernadette and $33,000 to Walter with the remainder of the proceeds from the sale of real estate equally to each as required by the stipulation. *See Circle B Enterprises, Inc. v. Steinke,* 1998 ND 164, ¶¶ 15-18, 584 N.W.2d 97.

[¶ 20] The trial court did not decide whether Walter's confession of the seven judgments constituted fraudulent conveyances. To the extent the ultimate distribution of these auction proceeds depends on the disposition of that issue, the trial court will have to decide it. If the confessed judgments do not constitute fraudulent conveyances by Walter, Bernadette nevertheless is entitled to recover from Walter because those judgments are not "valid, currently existing, secured claims on machinery and mortgages on real estate" within the meaning of the stipulation.

V

[¶ 21] We affirm the judgment as modified.

[¶ 22] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, CAROL RONNING KAPSNER, JJ., concur.