2017 ND 189

**Cody Allen BOOEN, Plaintiff, Appellant, and Cross-Appellee**

v.

**Jessica Marie APPEL, Defendant, Appellee, and Cross-Appellant**

No. 20170012

Supreme Court of North Dakota.

Filed 7/31/2017

650

Pamela F. Coleman, Grand Forks, ND, for plaintiff, appellant, and cross-appellee.

Patti Jo Jensen, East Grand Forks, MN, for defendant, appellee, and cross-appellant.

Crothers, Justice.

[¶1] Cody Booen appeals from a district court's order granting Jessica Appel's motion to relocate. Appel cross-appeals from the orders granting her motion to relocate and to show cause finding her in contempt. Booen argues the district court erred by granting the motion to relocate because it did not properly analyze and weigh the *Stout-Hawkinson* factors. Appel argues the district court erred in establishing a parenting plan, by finding her in contempt and requiring her to pay half of Booen's attorney fees. We affirm the district court's orders.

I

[¶2] Booen and Appel have a non-marital minor child. In September 2015 the district court entered a judgment adjudicating Booen as the father, awarding both parties shared legal responsibility and decision making and awarding Appel primary residential responsibility of the child, subject to Booen's reasonable parenting time. The judgment also established a parenting time schedule for the parties. In November 2015 the district court entered an amended judgment to reflect a correction regarding health care.

[¶3] In April 2016 Booen filed an application for an order to show cause accompanied by a brief and exhibits, seeking to hold Appel in contempt for disregarding the terms of the amended judgment. Booen alleged Appel was interfering with his relationship with the child. Following unsuccessful court-ordered mediation, Appel filed a motion to dismiss Booen's application and a response to the order to show cause.

[¶4] In May 2016 Appel filed a motion to relocate the child to Arizona. Appel argued that since entry of the 2015 amended judgment she had a child with her fiancé, Kory Knoff, and Knoff intended to relocate to Arizona for business opportunities. According to Knoff, he has the opportunity to open pizza franchises in Arizona. Booen objected to Appel's motion.

[¶5] In August 2016 an evidentiary hearing was held on both the application for an order to show cause and the motion to relocate. In December 2016 the district court granted Booen's application for an order to show cause, in part finding Appel in contempt. The district court also granted Appel's motion to relocate the child to Arizona, finding the move was in the child's best interests.

II

[¶6] Booen argues the district court erred in granting Appel's motion to relocate.

[¶7] "A district court's decision on a motion to relocate is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous." *Larson v. Larson*, 2016 ND 76, ¶ 21, 878 N.W.2d 54. "A finding of fact is clearly erroneous if it

is induced by an erroneous view of the law, there is no evidence to support it, or, if there is some evidence to support the finding, on the entire record we are left with a definite and firm conviction a mistake has been made." *Graner v. Graner*, 2007 ND 139, ¶ 12, 738 N.W.2d 9. "In applying the clearly erroneous standard, we will not reweigh evidence, reassess witness credibility, retry a custody case, or substitute our judgment for the trial court's decision merely because this Court may have reached a different result." *Hammeren v. Hammeren*, 2012 ND 225, ¶ 8, 823 N.W.2d 482.

[¶8] Section 14-09-07(1), N.D.C.C., provides "[a] parent with primary residential responsibility for a child may not change the primary residence of the child to another state except upon order of the court or with the consent of the other parent, if the other parent has been given parenting time by the decree." "The parent moving for permission to relocate has the burden of proving by a preponderance of the evidence the move is in the child's best interests." *Larson v. Larson*, 2016 ND 76, ¶ 21, 878 N.W.2d 54. To determine whether relocation is in the child's best interest the district court must apply the four factors outlined in *Stout v. Stout*, 1997 ND 61, ¶ 33, 560 N.W.2d 903, and modified in *Hawkinson v. Hawkinson*, 1999 ND 58, ¶ 9, 591 N.W.2d 144:

"1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,

2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,

3. The integrity of the noncustodial parent's motives for opposing the move,

. . . .

4. The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation."

*Id.* (quoting *Dvorak v. Dvorak*, 2006 ND 171, ¶ 13, 719 N.W.2d 362). "No single factor is dominant, and what may be a minor factor in one case may have a greater impact in another." *Id.* (quoting *Stai-Johnson v. Johnson*, 2015 ND 99, ¶ 6, 862 N.W.2d 823).

A

[¶9] Booen argues the district court erred by finding the first factor favors relocation. Booen argues the district court's conclusion that the move would improve Appel's and the child's quality of life are in irreconcilable conflict with its underlying findings regarding the first factor. Booen also claims no evidence supports that the move would result in financial, educational and health advantages or that the custodial family would remain intact.

[¶10] In analyzing the first *Stout-Hawkinson* factor, "the district court must balance the advantages of the move, while recognizing the importance of maintaining continuity and stability." *Stai-Johnson v. Johnson*, 2015 ND 99, ¶ 9, 862 N.W.2d 823. "The district court must give due weight to both economic and noneconomic advantages of the move." *Id.* Information the district court may consider when analyzing factor one include:

" [T]he custodial parent's proposed employment at the relocation site, whether the custodial parent's and child's health and well-being are benefitted, whether the custodial parent has remarried and requests to move to live with the new

spouse, whether the custodial parent will have more time to spend with the child, whether there are family members who will provide a support network, the child's reasonable preference, and educational opportunities.' "

*Id.* (quoting *Graner v. Graner*, 2007 ND 139, ¶ 15, 738 N.W.2d 9).

[¶11] A child's best interests are "inextricably interwoven with the quality of life of the custodial parent, with whom they live and upon whom they rely emotionally." *Tibor v. Tibor*, 1999 ND 150, ¶ 13, 598 N.W.2d 480. " 'A move which benefits the health and well-being of a custodial parent is certainly beneficial to the parent's child, and is consequently in the child's best interest.' " *Id.* (quoting *State ex rel. Melling v. Ness*, 1999 ND 73, ¶ 9, 592 N.W.2d 565).

[¶12] The district court found the first factor favored relocation. The district court explained Knoff's potential business opportunities were not a compelling factor, given Knoff's and Appel's current financial stability and the fact that Knoff only speculated regarding the potential success of the businesses in Arizona. However, the district court gave considerable weight to Knoff's history of running successful businesses, explaining the chance of him becoming even more successful would provide greater material benefits for Appel and the child.

[¶13] The district court further found the opportunities regarding geographical location and weather were not compelling, but found keeping the custodial home intact would be in the child's best interests. The district court also found the educational opportunities for the child in Arizona are "equally stimulating" to those available in Grand Forks. The district court's main reasoning in finding factor one favors relocation is the ability for the custodial home to remain intact and potential improve-

ments to Appel's well-being, stating: "Given that Knoff and Appel plan to marry, and given that Appel has long wanted to live in Arizona, . . . it is <u>possible</u> that those factors would benefit [the child] by keeping her custodial family intact and allowing her mother to experience a more positive life outlook." (Emphasis in original.)

[¶14] Under this Court's standard of review, the district court's findings are supported by the evidence and we are not left with a definite and firm conviction a mistake has been made. Appel and Knoff have a child together. They are not married but are engaged and planning a wedding for the fall of 2017. These facts support the district court's findings that the custodial family would remain intact and its ultimate conclusion that the move would improve Appel's and the child's quality of life. There is evidence which supports a finding contrary to the district court's ultimate conclusion. However, under our clearly erroneous standard of review, it is the district court and not us that weighs the evidence and assesses witness credibility. *See Hammeren v. Hammeren*, 2012 ND 225, ¶ 8, 823 N.W.2d 482; *see also Wolf v. Wolf*, 474 N.W.2d 257, 259 (N.D. 1991) ("We may have viewed the evidence and weighed those factors differently had we been the trier of fact; but that is not the standard on appeal and we will not reverse a decision of the trial court simply because we would have done differently had we been the trial court."); *Wagner v. Wagner*, 2000 ND 132, ¶ 12, 612 N.W.2d 555 ("We will not reverse a trial court's findings merely because we may have viewed the facts differently if we had been the trier of fact."). While we may have viewed the evidence differently had we been the trier of fact, the district court's findings on factor one are not clearly erroneous.

**B**

[¶15] Booen argues the district court erred in finding factor four favors relocation when factor two did not favor relocation. "Under the fourth factor, the court considers the negative impact of the proposed move on the relationship between the children and the noncustodial parent and the ability to restructure parenting time to preserve the relationship." *Larson v. Larson*, 2016 ND 76, ¶ 27, 878 N.W.2d 54. " 'Even though a move may add costs and distance to visitations, making it impossible to continue the frequency of visits between the noncustodial parent and child, the relationship between them can be preserved by a restructured visitation schedule.' " *Stai-Johnson v. Johnson*, 2015 ND 99, ¶ 13, 862 N.W.2d 823 (quoting *Tibor v. Tibor*, 1999 ND 150, ¶ 24, 598 N.W.2d 480). "Virtual visitation, using the telephone, Internet, and other technologies, can also ensure the child has frequent meaningful contact with the noncustodial parent and can be helpful to supplement in-person visitation." *Hruby v. Hruby*, 2009 ND 203, ¶ 28, 776 N.W.2d 530. "A relocation should be denied based on the fourth factor only in exceptional circumstances, including when the court finds a custodial parent would not foster the child's relationship with the noncustodial parent and would not comply with any visitation schedule the court could order." *Id.* at ¶ 23.

[¶16] The district court found the fourth factor favors relocation because a parenting plan could be established to address the concerns under the second and third factors. In finding the second factor did not favor relocation, the district court found Appel's motivation in relocating was, in part, for the purposes of defeating or deterring Booen's parenting. In considering the third factor, the district court found Booen's motives in opposing the move were valid.

[¶17] The district court found that granting the motion to relocate would limit Booen and his extended family's time with the child. The district court also expressed concern that Appel would not honor the parenting plan she proposed, citing the history of her actions. The district court determined it could alleviate Booen's concerns by establishing a parenting plan. Both parties argue the district court erred in fashioning the parenting plan.

[¶18] Booen argues the district court's parenting plan is erroneous because he cannot afford travel costs and the district court failed to analyze the negative impact the plan would have on Booen and his family's relationship with the child. Appel argues the district court's parenting plan is erroneous because it awarded financial and scheduling control to Booen.

[¶19] The record reflects a number of problems between the parties regarding parenting time. The district court expressed concern whether Appel would adhere to the parenting plan she submitted and found credible Booen's testimony regarding Appel's and Knoff's interference. The record reflects Booen does not have sufficient financial resources to regularly travel to Arizona. It appears the district court attempts to mitigate that problem by granting Booen more control over when he exercises parenting time, and by requiring Appel to pay for travel costs when Booen exercises parenting time in Arizona and when the child visits North Dakota. The district court's parenting plan also requires daily contact at 5:00 p.m. through telephone, e-mail, Skype, Facetime, or any other form of electronic communication. Under our standard of review, evidence supports the district court's findings and we are not left with a definite and firm conviction the court made a mistake in finding that factor four favored relocation.

The district court's finding is not clearly erroneous.

## C

[¶20] The district court found factors two and three do not favor relocation. Booen does not challenge the district court's underlying findings on the second and third prongs but argues the district court did not give enough weight to these factors when considering the *Stout-Hawkinson* factors in the aggregate. Booen argues the district court's ultimate conclusion that the move is in the child's best interests is inconsistent with its findings that the parties had difficulty making cooperative parenting decisions in the past, finding Appel in contempt and finding Appel's motive for relocation was partially motivated to defeat or deter Booen's visitation with the child.

[¶21] Regarding factor two, the district court found Appel's relocation was motivated in part to defeat or deter parenting time between Booen and the child. The district court found Appel interfered in Booen's parenting time and found Booen's testimony regarding those instances more credible. Regarding factor three, the district court found Booen's concerns regarding the relocation were valid.

[¶22] The district court's analysis of the *Stout-Hawkinson* factors is a finding of fact subject to the clearly erroneous standard of review. *Larson v. Larson*, 2016 ND 76, ¶ 21, 878 N.W.2d 54. This Court does not reweigh the evidence and we view the evidence in the light most favorable to the findings. *Id.* at ¶ 30. Reviewing the record, we conclude evidence supports the district court's findings on the second and third *Stout-Hawkinson* factors, and the aggregate evaluation and weight the district court gave all four factors is not clearly erroneous.

## III

[¶23] Appel argues the district court erred in granting the order to show cause, finding her in contempt. Appel argues Booen's contempt allegations are merely technical violations of the amended judgment. Appel contends the district court misapplied the law in finding her in contempt because it did not cite which provisions or terms of the amended judgment she violated and because no evidence supports the findings.

[¶24] "The district court has broad discretion in making contempt decisions." *Rath v. Rath*, 2017 ND 128, ¶ 9, 895 N.W.2d 306. This Court will disturb a district court's contempt determination only if the court abused its discretion. *Id.* "A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner; its decision is not the product of a rational mental process leading to a reasoned determination; or it misinterprets or misapplies the law." *Id.* This Court's review of a district court's determination on contempt is very limited. *Sall v. Sall*, 2011 ND 202, ¶ 7, 804 N.W.2d 378.

[¶25] "A party seeking a contempt sanction under N.D.C.C. ch. 27-10 must clearly and satisfactorily prove the alleged contempt was committed." *Prchal v. Prchal*, 2011 ND 62, ¶ 5, 795 N.W.2d 693. "Contempt includes the intentional disobedience, resistence, or obstruction of the authority, process, or order of a court." *Votava v. Votava*, 2015 ND 171, ¶ 7, 865 N.W.2d 821 (citing N.D.C.C. § 27-10-01.1(1)(c)). "To warrant a remedial contempt sanction, the moving party must show a willful and inexcusable intent to violate a court order." *Id.*

[¶26] The district court found Appel in contempt on four of Booen's eight allegations. The district court first found Appel interfered with Booen's parenting time and

failed to cooperatively co-parent regarding daily telephone calls. Second, the district court found Appel failed to cooperatively co-parent at the child's extracurricular activities. Third, the district court found Appel failed to co-parent by not providing Booen a timely response to his request that the child serve as a flower girl in her Godfather's wedding. Fourth, the district court found Appel failed to cooperatively co-parent by not providing Booen a timely response to his request that the child attend his grandmother's funeral.

[¶27] Booen's application for an order to show cause stems from a judgment requiring both parties have reasonable access to the child, at least once daily, through telephone, e-mail, texting or other electronic means during the other parent's parenting time. The judgment further requires each parent to "use their best efforts to foster a healthy, active, and loving relationship between their child and the other, and shall do no act and say no word intended or designed to minimize their child's affection for the other[.]"

[¶28] The district court's findings are supported by the record. The evidence shows Appel and Knoff frustrated Booen's ability to speak with the child on the telephone. The record further establishes Appel did not make accommodations for Booen to speak with the child when Appel began working night hours. Further, the district court found Booen's testimony more credible regarding instances in which Appel and Knoff did not use their best efforts to allow Booen to foster a loving relationship while attending the child's extracurricular activities. The record also establishes Appel did not cooperate with Booen's requests for the child to attend her Godfather's wedding and Booen's grandmother's funeral. The district court did not abuse its discretion by holding Appel in contempt.

[¶29] Appel argues the district court erred in awarding Booen attorney fees when he only prevailed on half of the allegations raised in the order to show cause. The district court found Booen established Appel was in contempt on four of the eight allegations in his application. The district court reasoned that because he prevailed on fifty percent of the issues raised in the application to show cause, he is entitled to fifty percent of his attorney fees regarding the order to show cause. As a sanction against Appel the district court held her responsible for half of Booen's claimed attorney fees.

[¶30] Appel argues the award of attorney fees is unwarranted because the district court abused its discretion in finding her in contempt. "Under N.D.C.C. § 27-10-01.1(4), a 'sanction requiring payment of a sum of money is remedial if the sanction is imposed to compensate a party or complainant, other than the court, for loss or injury suffered as a result of the contempt.'" *Holkesvig v. Welte*, 2012 ND 14, ¶ 10, 809 N.W.2d 323. "The [district] court, in its discretion, may award attorneys fees as part of the compensation to the complainant in contempt proceedings as reimbursement for costs and expenses incurred as a result of the contempt.'" *Peterson v. Peterson*, 2016 ND 157, ¶ 15, 883 N.W.2d 449 (quoting *Lauer v. Lauer*, 2000 ND 82, ¶ 11, 609 N.W.2d 450).

[¶31] Because the district court did not abuse its discretion in finding Appel in contempt, no evidence establishes the district court abused its discretion in awarding Booen fifty percent of his attorney fees. We conclude the district court did not abuse its discretion.

IV

[¶32] Appel filed a motion in this Court to strike Booen's inclusion of materials in

his reply brief that were not a part of the record. Booen filed a cross-motion to strike Appel's inclusion of materials in her brief that were not a part of the record. We grant both motions to strike because extra-record materials were included in violation of N.D.R.App.P. 28(f).

[¶33] Appel and Booen argue sanctions should be imposed in the form of attorney fees incurred in preparing their respective motions. This Court has the discretion under N.D.R.App.P. 13 to administer sanctions for noncompliance with the Rules of Appellate Procedure. *Silbernagel v. Silbernagel*, 2007 ND 124, ¶ 21, 736 N.W.2d 441. Because both parties violated the rule, we deny their requests for attorney fees.

V

[¶34] We affirm the district court order granting the order to show cause and granting the motion to relocate.

[¶35] Daniel J. Crothers

Lisa Fair McEvers

Jerod E. Tufte

Gerald W. VandeWalle, C.J.

Kapsner, Justice, dissenting.

[¶36] The district court's findings do not match the result in this case. Because I am left with a definite and firm conviction a mistake has been made, I would reverse the order granting Appel's motion to relocate.

[¶37] As the majority correctly notes, the district court found factors two and three of the *Stout-Hawkinson* factors did not favor relocation. Factor one of the *Stout-Hawkinson* factors requires consideration of the "prospective advantages of the move in improving the custodial parent's and child's quality of life." *Hawkinson v. Hawkinson*, 1999 ND 58, ¶ 6, 591 N.W.2d 144. In a case in which such "pro-

spective advantages" are speculative, as reflected by the district court's findings, the impact of the district court's findings on factors two and three should result in a denial of the motion for relocation. The district court noted Knoff anticipated opening up to twenty-five pizzeria locations in Arizona and estimated he could make "$100,000 to $150,000 annually." The district court noted the pizzeria company had reportedly done market research and financial projections, but did not provide profit and loss estimates or project annual income. The district court stated, "<u>None</u> of this information, research or projections reportedly generated by [the pizzeria company] was offered into evidence." (Emphasis in original). The district court also noted Knoff has not received any documentation showing he has been approved to open twenty-five stores and found that it "simply is [Knoff's] personal goal to open 25 stores in a 'years long process.'" The district court noted, despite Knoff purportedly knowing the pizzeria company's representative who provided a letter in support of Knoff's franchise opportunities, Knoff could not identify where the individual was located and speculated about what that individual's position was within the company. The district court even noted, "[t]his vagueness about key personnel is troubling in light of a request to relocate to establish financial stability." In light of these findings, the district court found Knoff's plans only "present the possibility for additional financial security, if the pizzerias are successful."

[¶38] Under factor two, the district court found Appel's motive for relocation was partially motivated to defeat or deter Booen's parenting time with the child. Under factor three, the district court found Booen's concerns about the relocation were valid. While no single factor is dominant, the findings on these two fac-

tors impact factor four. "Under the fourth factor, the court considers the negative impact of the proposed move on the relationship between the children and the noncustodial parent and the ability to restructure parenting time to preserve the relationship." *Larson v. Larson*, 2016 ND 76, ¶ 27, 878 N.W.2d 54. A motivation to defeat or deter a noncustodial parent's visitation necessarily contributes to a negative impact on the relationship between the noncustodial parent and the child. The district court's finding on factor two also necessarily shows a decreased "likelihood that each parent will comply with ... alternate visitation." *Hawkinson*, 1999 ND 58, ¶ 6, 591 N.W.2d 144. Further complicating the consideration of this factor, the district court found the co-parenting relationship between Booen and Appel is impaired by Knoff's behavior and interference. Among other concerns about Knoff's behavior, the district court noted "Knoff's comment that he is more of a father to LVB than Booen is to her, simply because she lives in his home, is troubling, to the extent that it undermines Booen's role in LVB's life." Elaborating, the district court stated, "viewing the evidence and testimony from Booen as a whole, the court finds that Knoff, with Appel's tacit consent, has interfered in the parties' co-parenting relationship."

[¶39] Under factor three, the district court considered the impact of the relocation on the child's relationship with extended family. The court recognized the move would cause the child to lose "the frequent contact with [Booen's] mother, brother and his family, or LVB's paternal grandparents, great-grandparents, aunt, uncle and cousins, which she currently has." As the district court described, the requested relocation would cause all of these relationships to be curtailed. The court noted if relocation is granted, "Appel would be taking LVB away from both Booen's extended family, as well as her own extended family who live in the Grand Forks, ND/Bemidji, MN geographical area." The court specifically noted the child is "particularly close to her paternal grandfather, who cannot travel by air due to health issues." In contrast to Appel, Booen made efforts to foster the relationship between the child and her extended family on the mother's side.

[¶40] The same order granting Appel's motion for relocation also found Appel was in contempt of court for four of the eight issues raised. Of the four issues for which the district court found Appel was in contempt, the most concerning and applicable to the relocation motion was: "Appel has interfered with Booen's parenting time and has failed to cooperatively co-parent with Booen with respect to daily telephone contacts." Such a finding does not bode well for Appel's "ability to restructure parenting time to preserve the relationship[,]" especially considering the distance of the requested relocation. *Larson*, 2016 ND 76, ¶ 27, 878 N.W.2d 54. The district court found Booen's testimony about the difficulties associated with securing affordable air travel to Arizona more credible that Knoff's. The district court noted, "reliance upon Allegiant for air travel would not assure Booen and LVB could continue to nurture and foster their parent/child relationship."

[¶41] The district court ultimately found factor four favored relocation after describing the impact of travel on Booen's and the child's relationship. The district court noted travel to Arizona would be unaffordable for Booen, that Booen's concerns about reduced parenting time were valid, and stated it was unlikely that Appel would honor a parenting plan like the one she had proposed. After recognizing these facts, the district court determined factor four favored relocation because a tailored

parenting plan "can be developed." The district court's solution to the numerous issues involved was to delineate a parenting plan that satisfied neither party. The parenting plan included extended summer parenting time. The district court determined the parenting plan's specificity would alleviate the concerns about Appel's inability to co-parent because, "[h]istorically, Appel has honored specifically designated parenting times. Therefore, Appel is likely to follow this plan." The history recited by the district court makes me skeptical of this assumption.

[¶42] Even before *Stout v. Stout*, 1997 ND 61, 560 N.W.2d 903, was decided, this Court has recognized that in relocation cases the trial court should weigh favorable factors of the move against the negative impact on the relationship between the child and the noncustodial parent. *Stout* at ¶ 9 (citing *Hedstrom v. Berg*, 421 N.W.2d 488, 490 (N.D. 1988)). Where, as here, the benefits are largely speculative, I am convinced those potential benefits are not shown to outweigh the negative impact on the child's relationship both with the father and with the extended family in the Grand Forks area. Given the troubling history of the mother's and the potential stepfather's lack of concern for and actual interference with those relationships, I have a definite and firm conviction a mistake has been made.

[¶43] Carol Ronning Kapsner