# IN THE COURT OF APPEALS OF IOWA

No. 18-1691
Filed May 15, 2019

**KYLE HESTER,**
      Plaintiff-Appellant,

**vs.**

**AMANDA DAVIS,**
      Defendant-Appellee.
_____


Appeal from the Iowa District Court for Clinton County, Patrick A. McElyea,

Judge.


A father appeals the district court's custody, visitation, and support order.

**AFFIRMED.**


Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellant.

J. David Zimmerman of J. David Zimmerman, P.C., Clinton, for appellee.


Considered by Doyle, P.J., Mullins, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**DOYLE, Presiding Judge.**

Kyle Hester is the father and Amanda Davis is the mother of K.D., born in July 2015. In September 2018, following a contested hearing, the district court entered its ruling on custody, visitation, and support granting the parents joint legal custody of their child. The court determined Amanda would have physical care of the child, and Kyle would have visitation on every other weekend, along with scheduled holiday and summer visits. The court ordered that Amanda could claim the child for tax purposes until she was no longer eligible to do so.

Kyle appeals the order, arguing the court should have placed the child in his physical care. In the event that this court affirms the physical-placement determination, Kyle asserts the district court should have granted him expanded and liberal visitation with the child and applied the relevant economic considerations related to extra visits. *See, e.g.*, Iowa Ct. R. 9.9 (providing for the application of an extraordinary visitation credit to the noncustodial parent's child support obligation if that parent's ordered visits exceed 127 days per year).

Our review is de novo. *See* Iowa R. App. P. 6.907; *Markey v. Carney*, 705 N.W.2d 13, 19 (Iowa 2005). However, we recognize that the district court was able to listen to and observe the parties and witnesses. *See In re Marriage of Zebecki*, 389 N.W.2d 396, 398 (Iowa 1986). Consequently, we give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but are not bound by them. *See* Iowa R. App. P. 6.904(3)(g). Importantly, our overriding consideration is the best interests of the child. *See* Iowa R. App. P. 6.904(3)(o); *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).

The facts of the case are essentially undisputed, and we adopt the facts found by the district court:

> Amanda and Kyle had a very short relationship which resulted in the birth of their minor child . . . . During the pregnancy Kyle and Amanda were not on good terms, to the point where Amanda concealed the fact that she was still pregnant to Kyle. When [the child] was born, Kyle was unaware he had a daughter. In July 2016, Amanda learned Kyle was doing better in his personal life and decided to introduce him to their daughter. For a period of about ten days Kyle had regular visits with his daughter. . . [and tried to] make a family unit with Amanda. This fell apart at [the child's] first birthday party when Kyle used marijuana. At that point Amanda prevented Kyle from having visits with [the child], and Kyle did not see his daughter for a period of almost two years.
> Kyle has made significant strides in the last couple of years. He was charged with a drug offense in January 2016 and subsequently pled guilty to a lesser-included offense several months later. Kyle has undergone drug treatment and remained sober.

On appeal, Kyle maintains the court failed to weigh Amanda's dishonesty regarding the pregnancy and her subsequent separation of the child from Kyle after he learned he was the child's father in its custody determination, and he asserts Amanda's actions show placement of the child in his physical care is in the child's best interests. We disagree.

Here, the district court was generous in its description of Kyle's conduct during "the last couple of years" when Kyle made "significant strides" after being "charged with a drug offense." Kyle was, in fact, charged with three criminal counts—one for possession of a controlled substance with the intent to deliver, namely marijuana, and two counts for unlawful possession of a prescription drug. Kyle pled guilty to the two counts of possession of a prescription drug and to the lesser offense of possession of marijuana. This does not include the prior "relatively serious" incident for which Kyle was on probation when he picked up the

three drug charges.[1]   Additionally, Amanda testified she had been frightened by Kyle's actions during her pregnancy.  In January 2015, she reported to the police that Kyle had been harassing her.  Then, after she thought Kyle had "cleaned up his act," Amanda contacted Kyle about their child.  He subsequently smoked pot at her house, leading to further disagreements between the parents.  Amanda testified Kyle volunteered to provide two clean drug tests, but he did not do so, so she did not permit any visits.

While we do not wholly approve of Amanda's conduct, we believe her actions, in context, do not evidence "an utter failure to support Kyle's relationship with his child."  Moreover, we believe the district court did not ignore Amanda's actions but rather weighed her actions in relation to Kyle's conduct, though it did choose to gloss-over Kyle's prior transgressions.  In any event, "[t]he objective of a physical care determination is to place the [child] in the environment most likely to bring [her] to health, both physically and mentally, and to social maturity." *Hansen*, 733 N.W.2d at 695.  In making this determination, we consider the list of factors set forth in Iowa Code section 598.41 (2018), along with other relevant factors.  *See* Iowa Code § 600B.40; *Hansen*, 733 N.W.2d at 696; *see also Ruden v. Peach*, 904 N.W.2d 410, 414 (Iowa Ct. App. 2017).

Kyle's conduct has improved since 2017.  Like the district court, we find "both parents are capable and will provide a stable and loving environment for their child."  Considering the relevant factors, including but not limited to Amanda's

---

[1] This incident was referred to vaguely during the hearing.  Kyle testified he had successfully completed probation in that case, and we presume deferred judgment was involved there.

historical role as the child's primary caretaker, we agree with the district court that placement of the child in Amanda's physical care was in the child's best interests. Accordingly, we affirm the district court's physical care determination.

Kyle alternatively asserts he should have been granted "more liberal" visitation by the district court. He essentially argues he should have been given extra visits to make up the time he lost with the child earlier in the child's life. He requests visitation during the week plus more time during school breaks when the child enters school. "Lost time is never found again." Benjamin Franklin, *Poor Richard's Almanac* (January 1748), *quoted in* John Bartlett, *Familiar Quotations* 347 (Emily Morison Beck ed., 15th ed. 1980). What has been done cannot be undone, and we do not believe the child's best interests would be served by adding a weekday visit under the circumstances of this case. Here, the child is young, and the parents live approximately an hour apart. The schedule as it stands is equitable and strives to maximize contact among the child and parents that is in the child's best interests. Upon our de novo review, we find no reason to disturb the district court's schedule. We affirm the visitation schedule, the extraordinary visitation credit is therefore inapplicable. *See* Iowa Ct. R. 9.9.

We do note the parties are free to cooperate with each other to modify the ordered visitation schedule as appropriate and in the best interests of the child. Moreover, the use of modern communication technology, particularly as the child gets older, to supplement in-person visitation as is appropriate and in the best interests of the child should be encouraged. *See, e.g.*, *Booen v. Appel*, 899 N.W.2d 648, 656 (N.D. 2017) ("Virtual visitation, using the telephone, Internet, and other technologies, can also ensure the child has frequent meaningful contact with

the noncustodial parent and can be helpful to supplement in-person visitation.").
The parents must put their child's needs first and work together for the benefit of
the child.

Finally, although "courts have the authority to award tax exemptions to the
noncustodial parent 'to achieve an equitable resolution of the economic issues
presented,'" "[t]he 'general rule' is that the parent given primary physical care of
the child is entitled to claim the child as a tax exemption." *In re Marriage of Okland*,
699 N.W.2d 260, 269 (Iowa 2005) (citations omitted). Here, although Kyle might
benefit from the exemption, we find the court's allocation of the tax exemption to
Amanda to be equitable. We therefore affirm the court's determination.

Upon our de novo review of the record, we agree with the district court that
the child's best interests are served by placement of the child in Amanda's physical
care with the visitation schedule set by the district court. We also conclude the
court's allocation of the tax exemption to Amanda is equitable. Accordingly, we
affirm the district court's custody order in all respects. Any costs on appeal are
assessed to Kyle.

**AFFIRMED.**